(70 South. 919)

No. 20245.

GONSOULIN et al. v. GONSOULIN.

(Jan. 24, 1916. Rehearing Denied Feb. 21, 1916.)

(Syllabus by the Court.)

1. DESCENT AND DISTRIBUTION ☞109—SUC- CESSION — COLLATION — ELECTION — DECI- SION ON APPEAL—CONSTRUCTION.

The law prescribes a certain term within which an heir, held liable for the collation of immovable property, shall elect whether he will collate in kind, or, by taking less, and a decree of this court granting a delay within which such heir may determine whether he will collate by taking less, construed with the law, must be held to mean that he must, within such delay, make his election, or, failing so to do, loses his right to collate in kind.

[Ed. Note.—For other cases, see Descent and Distribution, Cent. Dig. §§ 416, 419, 420; Dec. Dig. ☞109.]

2. DESCENT AND DISTRIBUTION ☞109—SUC- CESSION—COLLATION—EXPENDITURES.

When an heir is held to collate, by taking less with respect to the excess in value over the price paid by him of immovable property acquired from the common ancestor, he is entitled to recover only such expenditures made with respect to the maintenance and improvement of the property as were disbursed prior to the opening of the succession; the value of the property, for the purposes of the collation, being taken as of the time last mentioned and subject to the deduction of such expenditures.

[Ed. Note.—For other cases, see Descent and Distribution, Cent. Dig. §§ 416, 419, 420; Dec. Dig. ☞109.]

Appeal from Nineteenth Judicial District Court, Parish of Iberia; James Simon, Judge.

Action by Gabriel Gonsoulin and others against Antoine Gonsoulin. From the judgment, plaintiffs appeal. Reversed and rendered.

See, also, 132 La. 745, 61 South. 774.

L. T. Dulany, of New Iberia, for appellants. Cammack & Broussard, of New Iberia, for appellee.

Statement of the Case.

MONROE, C. J. Plaintiffs, children and grandchildren of Homer Gonsoulin and Odille Prince, his wife, brought a suit against defendant (their brother and uncle), in which, waiving certain allegations originally made, they eventually rested their demands exclusively upon C. C. 1248, which reads:

"The advantage which a father bestows upon his son, though in any other manner than by donation or legacy, is likewise subject to collation. Thus, when a father has sold a thing to his son at a very low price, or has paid for him the price of some purchase, or has spent money to improve his son's estate, all that is subject to collation."

The suit related to 109 arpents of land upon which Homer Gonsoulin and his wife resided, and, on the appeal, the following facts were found, and decree rendered by this court, to wit, Mrs. Homer Gonsoulin died in 1907, leaving a small estate, the largest asset of which consisted of a debt, of say $1,062, due by the community, and leaving also a number of children, issue of her marriage, or their representatives. She and her husband were then living, and had lived for many years, on the tract in question which was the separate property of the husband, and the two sons, Gabriel and Antoine, were living with them. The community debts, exclusive of that due to the wife, amounted to $600 or $700, and Homer Gonsoulin borrowed $1,000 from his son, Antoine, upon a mortgage of the home place, and used it in paying

them, and for other purposes. On September 1, 1908, he made a sale of the home place to Antoine for the recited consideration of $2,186 in cash (or about $20 an arpent), but that amount was, in fact, arrived at by taking into account the $1,000 which the vendor had borrowed, with interest, and some small amounts which were paid in cash, leaving a balance of $1,062 in the hands of the vendee, to be used in paying the debt due by the community to the heirs of his mother. It seems to have been understood that, as a further consideration, the vendor was to be allowed the usufruct of the property during the balance of his life, and while there was no stipulation to that effect, in the act of sale, he continued thereafter to occupy the property and to collect such revenues as it yielded, to the date of his death, which occurred on June 2, 1910, and the vendor and his wife, also, made their home there; the expenses of the establishment being divided between the father and the son, save that the latter paid the taxes. Defendant's witnesses, taking their testimony as a whole, did not place the value of the land at less than $30 an arpent, while other witnesses valued it at from $40 to $50 an arpent. The conclusion of the court was that it was reasonably worth $40 an arpent; that the vendee knew, at the time of the transaction, that the vendor had but a short time to live, and hence that he owed the collation which the plaintiffs demanded, and there was judgment as follows:

"It is therefore * * * decreed that * * * there now be judgment decreeing the defendant to be the owner of the property here in dispute, * * * subject to his obligation to collate with respect to the difference between the value of the property and the value of the consideration received therefor by the vendor, plus the taxes paid by the vendee and the expenses disbursed or incurred by him in the improvement of said property, in proportion to the increase in value which it has received thereby. It is further decreed that, should the defendant elect to make the collation in kind, he be allowed, by preference, in the partition, from the proceeds of the property, the sum of $2,186, with interest

at the rate of 8 per cent. per annum on $1,000, from September 1, 1908, until June 2, 1910, and at the rate of 5 per cent. per annum on the balance of said amount between said dates, and that he be further allowed all amounts expended by him in the payment of taxes on said property and all expenses disbursed or incurred by him in the improvement of said property to the extent of the increase of value resulting therefrom.

"It is further decreed that, should the defendant elect, within 30 days from the date upon which this judgment shall become final, to collate by taking less, his right to retain said property be recognized upon his paying to the plaintiffs herein their respective shares in the sum of $2,180, with legal interest from judicial demand, after deducting therefrom said taxes and expenses—being the difference, less said taxes and expenses, between the price paid for said property and its value at the date of the opening of the succession of Homer Gonsoulin.

"It is further decreed that this case be remanded to the district court for the ascertainment of the amounts that may be due to the defendant for taxes and expenses and for such further proceedings as may be necessary in the execution of this decree. * * * *" Gonsoulin v. Gonsoulin, 132 La. 745, 61 South. 774.

The decree in question became final on April 28, 1913. On may 10th, following, the case was set down for hearing in the district court, when it was continued by consent to May 17th, when it was again continued by consent to May 29th. The minutes of May 29th are not in evidence. The minutes of July 14th show that counsel for defendant, on that occasion, moved that the case be set for July 24th, and the minutes of July 15th (as we take it, the date being indistinct) show that the assignment for July 24th was set aside and the case reassigned for July 17th, upon which day counsel for plaintiffs filed a pleading, reading as follows:

"No. 1. And now * * * come plaintiffs, * * * and, by way of motion, aver * * * that the judgment of the Supreme Court * * * has become final; that, under the terms of said judgment, the defendant had 30 days in which to elect as to whether he should collate in kind, or by taking less; that he has failed to make said election and is, by reason of the law and the terms of said judgment, barred from electing, and is now bound to accept the property and pay the price therefor, at the rate of $40 per arpent, as fixed by the decree of the Supreme Court.

"No. 2. Plaintiffs further plead estoppel against any demand or attempt to prove value

of improvements or increased value of property or taxes paid by him, and interest on moneys, as those items could only be allowed in case of a collation in kind, * * * which defendant has failed to do, and is now, therefore, precluded. * * *"

To the motion and plea so filed, defendant made answer, in effect, denying that under the judgment of this court he had forfeited the right to collate in kind, and, in so collating, recovering for expenses and improvements, etc., and alleging that, through his counsel, he had repeatedly informed plaintiffs' counsel that he would collate in kind; that he was still willing so to do; that he had never been called on to elect; that the value of the standing crop should be added to the improvements, or, if not, that the property should not be delivered until the crop should have been harvested by defendant. Upon the hearing of the issue thus presented, one of the counsel for defendant testified that, while the application for rehearing was pending in this court, and, subsequently, he had discussed the case with plaintiffs' counsel and had informed them that defendant would collate in kind, to which testimony plaintiffs' counsel objected, on the grounds that it was irrelevant and that parol evidence was inadmissible, which objection was "referred to the effect." It was admitted that no written motion or other pleading, declaratory of defendant's intention to make an election, had been filed or executed, and that there was no authentic act of record to that effect.

The plea filed by plaintiffs was overruled, and thereupon, over the objection of their counsel, considerable testimony was taken with a view of showing disbursements made by defendant on account of the property, and there was judgment holding that defendant had elected to collate in kind and condemning plaintiffs in the sum of $2,186, with interest, being the amount found to have been paid by defendant for the property in controversy, and in various other sums, aggregating $2,147.20, found to have been expended by him in maintaining and improving said property, all of which sums, with the exception of certain amounts paid for taxes, were, however, expended after the opening of the succession of Homer Gonsoulin. The judgment contains some further provisions in regard to the standing crops and concludes by directing that:

"All of said property, thus reverting to the mass of the succession of Homer Gonsoulin and Odille Prince, be sold at public auction; * * * that the claim and judgment of Antoine Gonsoulin, as hereinabove recognized and allowed, be paid, by preference and priority over all other claims against said succession; that he be permitted to retain possession until final settlement of said judgment and be permitted to recover therefrom certain special movables; and that the litigants be referred to C. M. Compton, notary, for the completion of the partition."

And, from the judgment so rendered, plaintiffs have appealed.

### Opinion.

[1, 2] The decree of this court which has been quoted in the foregoing statement, is not, perhaps, as clear as it should have been, but, construed with reference to the opinion upon which it is based and the law, is, at least, susceptible of the interpretation that defendant should have 30 days, from the date upon which the decree was to become final, within which to elect whether he would collate by taking less, or, in kind; in default of which election, he should lose the right to collate in kind.

The Civil Code reads:

"Art. 1331. * * * The judge, if it be proved that the co-heir is bound to collate the property, shall order that the donee decide thereon, within a term to be fixed by the judge, which cannot exceed three days from the day on which the order has been notified to him, if he or his representative is found in the place." (This limitation of time being inapplicable, as we apprehend, in case of appeal.)

"Art. 1332. If the donee, who is bound to collate an immovable given him by the deceased, declare within the term fixed, as aforesaid, that he will return it in kind, the property, from that

instant, becomes united to the other effects of the succession which is to be divided."

"Art. 1333. But if the donee declare that he will not return the immovable property which has been given him, but will take his share in the effects of the succession, after deducting the value of such immovable property, *or if he permits the term, granted to him to make his decision, to expire, without deciding on the manner in which he will make his collation, he shall lose the right of returning this property in kind*" (italics by the court).

Articles 1261 and 1262 provide that, if, within the term granted, the donee has elected to collate in kind, and the property is thereafter destroyed, without act or fault of his, the loss falls on the succession; and, if there is a partial destruction, he collates the property in the state in which it is left; but, if the property is destroyed after he has elected to collate by taking less, the loss falls on him.

To hold, therefore, that an heir may have a delay within which to determine whether he will collate by taking less, and may, thereafter, take his own time in determining whether he will collate in kind, would be to ignore both the letter and reason of the law, which was not the intention of the judgment under consideration.

It is possible that our learned Brother of the district court may have been of the opinion that defendant's election was sufficiently indicated in the conversations between his counsel and counsel for plaintiffs, but we are unable to concur in that view. The provisions of the Code to which we have referred relate to judicial proceedings, concerning immovable property, and do not contemplate that they are to be conducted by means of casual conversations between the counsel of the litigants.

Article 1269 of the Code provides that, when the donee has elected to collate the immovable by taking less, the collation must be made according to the value which the property had at the opening of the succession;

"a deduction being made for the expenses incurred thereon, in conformity with what has been heretofore prescribed." In such case, however, the expenses to be deducted are those incurred prior to the opening of the succession, including, in this instance, only the taxes of 1908 and 1909, amounting, in the aggregate, to $53.34, so that the account between defendant and his coheirs would appear to stand as follows:

| | |
|---|---:|
| Value of property, as fixed by judgment of this court | $4,360 00 |
| Price paid by defendant | 2,186 00 |
| Excess of value over price paid | $2,174 00 |
| Amount of taxes, paid by defendant, to be deducted | 53 34 |
| Amount to be collated | $2,120 66 |

Counsel for plaintiffs, however, find the "excess of value over price paid" to be $2,172, and "amount of taxes, paid by defendant, to be deducted," $64.24, leaving "amount to be collated $2,107.76," and we accept those figures, the more particularly as they enable us to correct a slight error of calculation in our former decree. We may add, in conclusion, that the judgment appealed from deals with the property here in controversy as having belonged to the community which existed between Homer Gonsoulin and Odille Prince, his wife, whereas, we found, on the former hearing of the case, that it was the separate property of Homer Gonsoulin, and it may possibly be necessary to bear that fact in mind.

For the reasons thus assigned, it is adjudged and decreed that the judgment appealed from be annulled and set aside, and that there now be judgment for plaintiffs, condemning the defendant, Antoine Gonsoulin, to collate by taking less, or, by payment to the mass (as his virile share of the estate to be partitioned may be greater or less than the amount to be collated) of the sum of $2,107.76. It is further decreed that said defendant pay the costs of this proceeding.